UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CRYSTAL LEMAY,

     Plaintiff,

v.                        Case No.:  2:22-cv-9-SPC-KCD

UCMS, LLC,

     Defendant.
_____/

## OPINION AND ORDER

Before the Court is Defendant UCMS, LLC's Motion for Summary Judgment.  (Doc. 47).  Plaintiff Crystal Lemay responded (Doc. 52), and UCMS replied to Plaintiff's Response in Opposition (Doc. 53).

## DISCUSSION

This case is largely a Family Medical Leave Act (FMLA) and Americans with Disabilities Act (ADA) case, with some Florida Civil Rights Act (FCRA) and Employee Retirement Income Security Act (ERISA) claims thrown in.

From February 2018 until January 9, 2020, Lemay was employed by UCMS.  (Doc. 1 at 6).  For purposes of her claims, the most relevant months of her employment are November 2019, December 2019, and January 2020.

On November 25, 2019, Lemay went to the emergency room for "extreme abdominal pains."  (Doc. 52-2 at 1).  She sent Nicole Kinsworthy (CEO of

UCMS) a series of text messages that day explaining a panoply of issues discovered by doctors: "[A] borderline enlarged spleen, a stable umbilical hernia, a stable pulmonary nodule w/right upper lobe, oh and yea a new black spot measuring 1cm on my uterus possible [sic] cancerous." (Doc. 52-2 at 1; Doc. 47-9 at 1). Medical records from that date confirm doctors found a "1 cm hypodense focus . . . too small to characterize" on the "left aspect of the uterine body." (Doc. 47-1 at 7). Those records indicate that "[i]f clinically warranted," Lemay should follow up with a pelvic ultrasound "on a nonemergent basis." (Doc. 47-1 at 7).

On November 26, 2019, Lemay orally informed Kinsworthy and Shaidy Ventura (UCMS Director of Human Resources) that "due to her prior medical history, her physician recommended surgery" that would require her to take time off from work. (Doc. 1 at 10). On November 30, 2019, however, Lemay spoke to her doctor and decided she would "like to avoid" a hysterectomy. (Doc. 47-6 at 3).

On December 2, 2019, Lemay told Ventura via text that she "may have to schedule a surgery soon . . . once I see my dr [sic] I will schedule that date and I will let you know ASAP." (Doc. 52-3 at 2-3).

Despite her representation to Ventura, Lemay returned to the doctor's office on December 6, 2019, and declined a hysterectomy in favor of more conservative treatment. (Doc. 47-3 at 3). Then sometime between December

6, 2019, and December 18, 2019, Lemay requested a hysterectomy. (Doc. 47-5 at 2). "Around" December 18, 2019, Lemay scheduled the surgery for January 13, 2020. (Doc. 52-1 at 4). She orally informed Kinsworthy and Ventura of her surgery date and the month of time off she would need to recover. (Doc. 52-1 at 4).

Text messages between Lemay and Kinsworthy on January 3, 2020, show that Ventura told Lemay she could not work from home after her surgery. (Doc. 52-2 at 4; Doc. 52-4; Doc. 47-10 at 1). That same day, Lemay told Kinsworthy that she was "more than likely" canceling her surgery for monetary reasons. (Doc. 52-2 at 4; Doc. 47-10 at 1). But two days later on January 5, 2020, Lemay said she had "preop in the morning." (Doc. 52-2 at 5; Doc. 47-10 at 1).

On January 8, 2020, Ventura emailed Lemay requesting she submit a time off request for her surgery because "I need to know your last day of work in the office and when you expect to return to the office." (Doc. 52-5). Lemay submitted a written leave request that day. (Doc. 1 at 10).

The next day, Ventura fired Lemay. (Doc. 1 at 4). Ventura told Lemay that her position was being eliminated. (Doc. 1 at 11; Lemay Depo p 131, ln 18-24). Lemay had a hysterectomy on January 13, 2020, and she began a new job with a new company the month after. (Lemay Depo p 139, ln 7-19; Doc. 52-1 at 5).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

Lemay filed an eight-count complaint. (Doc. 1). Lemay alleges two FMLA claims (interference with FMLA rights and FMLA retaliation), three ADA claims (discrimination, failure to accommodate, and retaliation/interference), two FCRA claims (discrimination/retaliation and failure to accommodate), and an ERISA claim. (Doc. 1).

**A. Count I: Interference with FMLA Rights**

Lemay alleges that UCMS interfered with her FMLA rights by failing to provide her with notice of her FMLA rights and by terminating her employment after she requested FMLA leave.  (Doc. 1 at 18).

FMLA interference requires three elements: (1) the plaintiff must show that she was entitled to a benefit under the FMLA, (2) the plaintiff must show that her employer denied her that benefit, and (3) the plaintiff must "demonstrate harm, or prejudice, resulting from the employer's interference with her exercise (or attempted exercise) of an FMLA benefit."  *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023).  The parties square off over the first element.

To state a claim for interference with an FMLA right, a plaintiff needs to demonstrate by a preponderance of the evidence that she was entitled to (but denied) the right.  *O'Connor v. PCA Fam. Health Plan, Inc.,* 200 F.3d 1349, 1353-54 (11th Cir. 2000).   So the plaintiff needs to show that she provided her employer with proper notice of the need for FMLA leave.  *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015).  "An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable."  *White v. Beltram Edge Tool Supply*, 789 F.2d 1188 (11th Cir. 2015).

UCMS argues that Lemay's request for FMLA leave was inadequate and untimely under 29 C.F.R. § 825.302 and so failed to trigger UCMS's FMLA obligations.  The problem with UCMS's argument is that the adequacy and timeliness of Lemay's notice are steeped with questions of disputed material facts.

Whether Lemay's hysterectomy was foreseeable is a muddy issue. Lemay never received a cancer diagnosis, and medical records suggest that the spot on her uterus was "nonemergent."  (Doc. 47-1 at 7).[1]  Doctors had suggested Lemay get a hysterectomy years before the spot appeared—and years before her employment with UCMS.  (Doc. 47-6 at 3).  Yet as of December 6, 2019, Lemay continued to decline a hysterectomy—only to have one 38 days later.  (Doc. 47-3 at 3).

Without clarity on whether Lemay's hysterectomy (and leave) was foreseeable, it is hard to determine whether her notice was adequate.  If her hysterectomy was foreseeable, she would generally have to give her employer at least 30 days' notice before FMLA leave was to begin and her notice would need to include "the anticipated timing and duration of the leave."  29 C.F.R. § 825.302(a)-(c).  But if her need for leave was unforeseeable, Lemay would

---

[1] *But see Munoz v. Selig Enters.*, 981 F.3d 1265, 1276 (11th Cir. 2020) ("Employees with health conditions who experience a sudden, acute flareup can demonstrate an unforeseeable need for FMLA leave").

need to inform her employer "as soon as practicable" and only "provide sufficient information for [her] employer to reasonably determine whether the FMLA may apply to the leave request." *White v. Beltram Edge Tool Supply*, 789 F.2d 1188, 1195 (11th Cir. 2015); 29 C.F.R. § 825.303(b). This distinction matters here.

There are at least three distinct events that may constitute some (or all) of Lemay's "notice" to UCMS. Some discussions were oral, and their precise content is uncertain. Some discussions occurred outside the 30-day notice window and others occurred within it. Some discussions occurred with Kinsworthy and others with Ventura. And it's unclear whether—before her written notice on January 8th—she specifically requested *time off* from work for surgery. *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1122 (11th Cir. 2023) (noting that 29 C.F.R. § 825.300(b)(1) "sets a low bar, but in either triggering instance, the employee must ask for time off—*i.e.*, leave—in order to prompt the employer's notice obligations").

"Whether a plaintiff's notice is adequate is generally a jury question." *See Lee v. Clark*, No. 1:21-CV-03854-ELR-JEM, 2023 WL 2113616, at *8-9 (N.D. Ga. Jan. 13, 2023) (citing cases from the Second, Third, and Eighth Circuits). And it is easy to see why. An employer only incurs FMLA obligations when certain circumstances arise. Whether these circumstances have arisen

requires analysis of the sufficiency of a (possibly verbal) notice,[2] as well as an analysis of timeliness. *See Sparks v. Sunshine Mills*, 580 F. App'x 759, 765 (11th Cir. 2014) (finding the employee's "notice" insufficient when he informed his employer "it was looking like it was very possible [he was] going to have to have surgery" but "did not request leave or provide any information related to the timing or duration of any leave"); 29 C.F.R. § 825.302(a). And the timeliness analysis requires inquiry into practicability, which turns on "all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). Because of the disputed material facts over Lemay's notice, summary judgment as to the FMLA interference claim (Count I) is denied.

## B. Count II: FMLA Retaliation

Count II alleges FMLA retaliation. (Doc. 1 at 20). The FMLA prohibits employers from retaliating against employees for engaging in protected activities. *Munoz v. Selig Enters.*, 981 F.3d 1265, 1275 (11th Cir. 2020). FMLA retaliation claims are assessed under the familiar *McDonnell Douglas* burden-shifting framework. *Id.*

---

[2] UCMS says it was company policy for leave requests to be in writing, so "any verbal request would not comply with company policy/procedure." (Doc. 47 at 12). But this is yet another disputed fact. UCMS did not provide a company handbook or other written document in support of this "policy." Instead, it provided a text message from approximately nine months prior to Lemay's surgery which said, "There may be a new process for paperwork re: time off, but I approve the time off." (Doc. 47-8). Lemay stated in her deposition that every time she requested time off, she "spoke to [Kinsworthy] and got it okayed through her" and that Kinsworthy told her she did not need to request time off for her hysterectomy in writing. (Lemay Depo p 102-103, ln 2-23).

The burden starts with the plaintiff to show a prima facie case of FMLA retaliation: (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) there is a causal connection between the two. *Hubert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)*; see also Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (the causal connection element is satisfied if a plaintiff shows that the protected activity and adverse action were "not wholly unrelated"). If the plaintiff establishes her prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. *Id.* If the defendant provides such a reason, the plaintiff must show that the defendant's proffered reason for the adverse action is pretextual. *Id.* To establish a retaliation claim, the plaintiff also must show that the employer's actions were motivated by an impermissible retaliatory or discriminatory animus. *Id.*

Lemay has met her prima facie burden. It is undisputed that she submitted a formal written request for FMLA leave on January 8. And it is undisputed that Ventura, who knew about Lemay's leave request, fired her the next day. *See Brungart*, 231 F.3d at 799 (a plaintiff can show the protected activity and the adverse action are "not wholly unrelated" if the decision maker was aware of the protected conduct at the time of the adverse employment action).

So the burden shifts to UCMS to provide a legitimate reason for Lemay's firing—but UCMS has not given one.  The Court's only information about why UCMS fired Lemay is Lemay's deposition.  According to Lemay, she was fired by Ventura, who said, "I have to release you from your position.  We no longer need [your position]."  (Lemay Depo p 131, ln 20-24).  But UCMS does not offer this specific reason (or any other reason) for why it terminated Lemay.  UCMS simply quotes Lemay's deposition testimony on what Ventura told her when she was fired.  (Doc. 47 at 8).  Without supplying any reason for firing Lemay, UCMS has not carried its burden to win on summary judgment.  So the Court denies summary judgment as to the FMLA retaliation claim (Count II).

## C. Counts III-V: ADA Claims

The ADA protects employees who: (1) have a disability, (2) can perform the essential functions of their job with or without reasonable accommodations, and (3) are subjected to unlawful discrimination because of their disability. *Munoz v. Selig Enters.*, 981 F.3d 1265, 1272 (11th Cir. 2020) (internal citation omitted).  Only the first prong is at issue here.

Under the ADA, a "disability" is: (1) a physical or mental impairment that substantially limits one or more major life activities or such individual, (2) a record of such impairment, or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1).  Lemay pursues her ADA claims in Counts III-V under all three theories of disability (actual disability, record of disability,

and regarded as disability).   However, UCMS only provides meaningful argument as to the actual disability and regarded as disability theories.[3] Because no argument is made on Lemay's record of disability theory, it survives summary judgment as to all ADA claims.  *See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("[D]istrict courts cannot concoct or resurrect arguments neither made nor advanced by the parties").  With that said, the Court will next analyze the ADA claims collectively as to Lemay's actual and regarded as disability claims, and will follow with the other matters specific to individual counts.

   *1. Actual Disability*

   As stated, an actual disability is a physical or mental impairment that substantially limits one or more major life activities or such individual.  "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  A "major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel,

---

[3] UCMS' sole reference to "record of disability" is a quote from *Lambert v. Target Corp.*: "Since Plaintiff 'does not have a record of impairment, nor is there any evidence that Defendant regarded Plaintiff as having an impairment . . . there is 'no genuine issue of material fact that she was [not] disabled' and 'Defendant is entitled to summary judgment.'"  (Doc. 47 at 19).  It otherwise makes no argument on this theory of disability.

bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B).

Lemay never clearly pinpoints her disability.  In her Complaint (Doc. 1), Lemay does not state her disability or what major life activity it impacts; instead, she relies on boilerplate language to allege she has a disability.  In opposing summary judgment (Doc. 52), Lemay offers more on her disability. Specifically, she says, "HPV that caused precancerous cells and heavy and irregular menstrual cycles that led to her hysterotomy was an actual disability because it substantially limited her major life activity of reproduction and normal cell growth."  (Doc. 52 at 13).  This sentence is ambiguous as to her actual disability—HPV?  Precancerous cells?  Heavy and irregular menstrual cycles?  Her hysterectomy?

*Munoz v. Selig Enters.*, 981 F.3d 1265, 1275 (11th Cir. 2020) is instructive in evaluating Lemay's actual disability.  In *Munoz*, the Eleventh Circuit considered whether a plaintiff was disabled under the ADA by ovarian cysts, uterine fibroids, and endometriosis.  *Id.* at 1272.  The plaintiff suffered "extreme pain, exhaustion, sleep interruption, and lack of bodily function control" which substantially limited her ability to sleep, work, and reproduce. *Id.* at 1273.  She said, "there were days she could not leave bed because of pain and fatigue" and she was "house bound from time to time."  *Id.*  But the Eleventh Circuit concluded that because the record did not contain evidence of

the timing, frequency, and duration of the plaintiff's impairments, she did not prove that she was disabled under the ADA. *Id.* The Court recognized that although there was record evidence that the plaintiff suffered from endometriosis, uterine fibroids, and ovarian cysts—all "disorder[s] of the reproductive system"—she did not introduce evidence that she was substantially limited in her ability to procreate because of these impairments. *Id.*

The plaintiff in *Munoz* presented more evidence supporting her alleged disability than Lemay has here. Lemay testified that her disability is "unknown [precursor] cancer," which she was diagnosed with in 1999. (Lemay Depo p 18, ln 13-16; Doc. 52-1 at 1). Her "diagnosis" of "unknown cancer" caused her to be disabled because it caused her "stress." (Lemay Depo p 22, ln 6-9).[4]

But just before Lemay's employment with UCMS, she worked for "Dr. Jones" for "a long time." (Lemay Depo p 35, ln 16-23). During her employment with Dr. Jones, Lemay never took medical leave, never requested accommodations, and did not consider herself disabled. (Lemay Depo p 35-37, ln 16-1). Lemay explained the onset of her disability as both 1999 and 2018 by

---

[4] She expands on this later in her deposition: "When I have to go every day in pain, constant menstrual cycle, I am flowing constantly, bleeding constantly, cramping constantly, having to go in for testing, having to wait for the biopsies to come back, that can stress anyone." (Lemay Depo p 38, ln 2-10). But apparently not much has changed since 1999, because she has had "on and off testings" since 1999. (Lemay Depo p 38, ln 12-15).

saying, "It's testing . . . you can't put a table on when somebody has a precursor cell." (Lemay Depo p 37, ln 3-16).

Lemay is also silent on how her HPV or her "unknown [precursor] cancer" substantially limits her ability to reproduce as compared to most people in the general population. *See Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 921 (11th Cir. 2017) (finding a letter from the plaintiff's chiropractor limiting her work hours "did not explain how [her] back pain substantially limited any of her major life activities"). Lemay said that "it is now impossible for me to have children because of the hysterectomy," but her hysterectomy cannot be her disability because it occurred after she was fired from UCMS. (Doc. 52-1 at 5); *Munoz*, 981 F.3d at 1273.

Lemay also stated that she believes HPV affects her normal cell growth. (Doc. 52-1 at 1). "Normal cell growth" is a major life activity under the ADA. 42 U.S.C. § 12102(2)(B). But the Court has very limited information concerning Lemay's "normal cell growth."[5] First, there is Lemay's "understanding" that her normal cell growth is affected. (Doc. 52-1 at 1). Next, there is Lemay's testimony about her yearly pap smears since 1999: "Some tests come back good. Some tests come back bad. I do not have a number."

_____

[5] The ADA generally assumes that cancer substantially limits normal cell growth. 29 C.F.R. § 1630.2(j)(3)(iii). But there is no evidence in the record that Lemay had cancer, and Lemay does not affirmatively represent that she had cancer.

(Lemay Depo p 19-21, ln 19-4).  And finally, there is Lemay's testimony that she "doesn't know" if her pap smear results in 2019 were different than her pap smear results between 1999 to 2018.  (Lemay Depo p 22-23, ln 20-8).  With no explanation of timing, frequency, or duration, and no real evidence that her HPV substantially limited her normal cell growth, Lemay has not met her burden.

Even if the Court were to consider Lemay's disability to be pain and irregular menstrual cycles,[6] the Court is missing evidence that these conditions substantially limited a major life activity.  And Lemay lacks sufficient evidence of the timing, frequency, and duration of her pain and irregular menstrual cycles.  *Lewis v. City of Union City*, 934 F.3d 1169, 1180 (11th Cir. 2019) (finding no actual disability because "the record here is devoid of evidence of the severity, frequency and duration of these episodes").

"'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(i).  But that does not mean there is *no* standard.  And where, as here, the Court is left trying to piece together what Lemay's alleged condition is, when it arose, how often it manifests, whether it substantially

---

[6] Before her hysterectomy, for reasons unclear from the record, Lemay was in "constant [abdominal] pain . . . [and] bleeding every two weeks."  (Lemay Depo p 26-27, ln 20-21).  Her pain and irregular menstrual cycles predate her employment with UCMS.  (Lemay Depo p 39, ln 9-16).

limits her, and what major life activity it impacts, the standard has not been met.

The Court thus grants summary judgment as to Plaintiff's theory of actual disability on the ADA Claims in Counts III-V.

*2. Regarded As Disability*

An individual is considered "disabled" if she is "regarded as having such an impairment . . . This means that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'" 29 C.F.R. § 1630.2(g)(iii). Under the "regarded as" prong of the definition of "disability," it is the perception of an action or perceived physical impairment that matters, not whether the plaintiff actually has an impairment that "substantially limits, or is perceived to substantially limit, a major life activity." 29 C.F.R. § 1630.2(l).

UCMS raises two brief points in opposition to Lemay's "regarded as" claims. First, UCMS says it could not have perceived Lemay to be disabled because she did her work in a timely manner. Unsurprisingly, UCMS cites no case law to support its position. UCMS's argument suggests that an employer cannot regard an employee as disabled so long as the employee can still perform work tasks. That's nonsensical.

Second, UCMS argues that Lemay could not have a "regarded as" disability because her impairment was "transitory and minor." (Doc. 47 at 17-

19).  This argument also fails.  A "transitory impairment" is "an impairment with an actual or expected duration of 6 months or less."   42 U.S.C. § 12102(3)(B).  The ADA does not define "minor."

UCMS discusses the "transitory and minor" issue as though Lemay's hysterectomy was her (perceived) impairment.   But her surgery was her treatment, not her impairment.  *See, e.g.*, *Silk v. Bd. of Trs.*, 795 F.3d 698, 706 (7th Cir. 2015).  And to defeat Lemay's "regarded as" claims, the burden is on UCMS to prove that Lemay's impairment was objectively transitory and minor. 29 C.F.R. § 1630.15(f).  UCMS has presented, however, no evidence of this, except that Lemay returned to the workforce after a month-long recovery period.  But again, this establishes only that she timely recovered from her surgery; it does not speak to whether her impairment was (or is) transitory and minor.

It also bears repeating that UCMS has the burden to prove that Lemay's impairment was objectively transitory and minor.  Lemay notified UCMS that she thought she had cancer.  Yet UCMS has not argued—or even mentioned— that an objective employer would view cancer as transitory and minor.

Thus, the Court denies summary judgment on Counts III-V regarding Lemay's "regarded as" theory of disability.

But the Court cannot stop there because UCMS makes one more argument specific to her failure to accommodate claim.

17

**D. Count IV: Failure to Accommodate**

Lemay alleges that she requested a reasonable accommodation for her disability—leave—and that UCMS failed to determine whether her requested accommodation was reasonable, failed to grant her leave, and terminated her after she submitted her leave request. (Doc. 1 at 27).

Under the ADA, "discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless doing so "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). "Even if an employee is legally disabled, she must specifically request an accommodation to trigger the employer's accommodation obligations." *D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020). But "if an employee does not require an accommodation to perform [his] essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." *Id*.

In moving for summary judgment, UCMS argues that FMLA leave cannot constitute a reasonable accommodation under the ADA. (Doc. 47 at 20). To support this argument, UCMS relies exclusively on *Lowmack v. Am. Air Conditioning & Heating Sols., LLC*, No. 2:21-cv-1310-KKM-JSS, 2022 WL 1321385, at *5 (M.D. Fla. May 3, 2022). *Lomack*, in turn, relies on a single line

from *Gilliard v. Ga. Dept. of Corr.,* 500 F. App'x 860, 864 (11th Cir. 2021) that quotes an ADA regulation: "The leave provisions of the FMLA are 'wholly distinct from the reasonable accommodation obligations of employers covered under the ADA,'" 29 C.F.R. § 825.702(a).

But a closer reading of 29 C.F.R. § 825.702(a) suggests that "wholly distinct" does not mean what UCMS thinks it means.  In fact, the regulation also states that "[w]hen an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes." *Id.* And it provides an example to show the interplay between FMLA and the ADA:

> A qualified individual with a disability who is also an eligible employee entitled to FMLA leave requests 10 weeks of medical leave as a *reasonable accommodation*, which the employer grants because it is not an undue hardship.  The employer advises the employee that the 10 weeks of leave is *also being designated as FMLA leave* and will count towards the employee's FMLA leave entitlement.  *This designation does not prevent the parties from also treating the leave as a reasonable accommodation* and reinstating the employee into the same job, as required by the ADA, rather than an equivalent position under FMLA, if that is the greater right available to the employee.

29 C.F.R. § 825.702(c)(2) (emphasis added).  Considering the full language of the regulation, the Court is unpersuaded by UCMS's argument. Thus, the Court denies summary judgment as to the failure to accommodate claim (subject to the Court's ruling regarding Lemay's "actual disability" theory).

**E. Count V: Retaliation**

Because the Court has granted summary judgment as to Lemay's actual disability theory, it must clarify how the ADA retaliation/interference claim (Count V) will go forward, even though UCMS never specifically moved for summary judgment on this claim.  The Court's finding that Lemay is not actually disabled does not undermine Count V because she engaged in a statutorily protected activity by requesting an accommodation and "need not prove the underlying claim of discrimination which led to her protest, so long as she had a reasonable good faith belief that the discrimination existed." *Branscomb v. Sec'y of the Navy*, 461 F. App'x 901, 905 (11th Cir. 2012) (citing *Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

**F. Counts VI-VII: FRCA Claims**

Counts VI (Unlawful Discrimination/Retaliation in Violation of the FCRA) and VII (Failure to Accommodate under the FCRA) mirror the ADA claims.  UCMS does not separately argue these FCRA claims,[7] and disability actions under the FCRA are analyzed under the same framework as the ADA. *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1336 (11th Cir. 2021).

---

[7] UCMS's only comment on Lemay's FCRA claims is that if the Court grants summary judgment for UCMS on Lemay's ADA claims, the Court must also grant summary judgment for UCMS on Lemay's FCRA claims.  (Doc. 47 at 21).

Accordingly, the Court's discussion of Lemay's ADA claims applies to her FCRA claims.

**G. Count VIII: Violation of Section 510 ERISA**

A plaintiff needs to exhaust her administrative remedies before bringing her ERISA claim in federal court. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008). Lemay concedes that she has not done so,[8] but argues that exhaustion should not be required in the Eleventh Circuit. (Doc. 52 at 18-V19). That is not for this Court to decide, so summary judgment is granted in favor of UCMS on Lemay's ERISA claim (Count VIII).

## Conclusion

The Court denies summary judgment as to Counts I and II. The Court grants summary judgment as to Lemay's actual disability theory for her ADA claims in Counts III-V and her FCRA claims in Counts VI and VII but otherwise denies summary judgment and allows Lemay to proceed to trial under her regarded as and record of disability theories. Further, the Court grants summary judgment in favor of UCMS on Lemay's ERISA claim in Count VIII.

---

[8] While not expressly conceded, Lemay agrees with summary judgment on this Count: "With the exception of the ERISA § 510 claim, Plaintiff respectfully requests that the Court deny Defendant's Motion on all other causes of action." (Doc. 52 at 19).

Accordingly, it is now

**ORDERED:**

1. Defendant UCMS, LLC's Motion for Summary Judgment (Doc. 47) is **GRANTED** in part and **DENIED** in part.  Summary judgment is **GRANTED** only as to Plaintiff's theory of actual disability for Counts III-VII and **GRANTED** as to Count VIII.  The Motion is otherwise **DENIED**.

2. This case is **REFERRED** to United States Magistrate Judge Nicholas P. Mizell for a settlement conference.  On or before **May 31, 2024**, the parties must contact Judge Mizell's courtroom deputy, Wendy Winkle, to coordinate availability for the conference.

**DONE** and **ORDERED** in Fort Myers, Florida on May 21, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record